GEORGIA,
Chatham Co.
MAY, 1806.

Ex parte
George.

*Minutes of Superior Court, letter F. p. 276.*

*Chambers*, 23d May, 1806.

Before *Jones*, Judge.

*Ex parte* GEORGE, a free man of colour.

UPON the petition of *Benjamin Burroughs*, and *Oliver Sturges*, on the part and behalf of *George*, a free man of colour, stating, that the said *George* is now in confinement, in the common jail of the county of Chatham, under sentence founded upon a conviction for inveigling, or attempting to inveigle a negro; which said conviction was had before *Balthazar Shaffer*, *Ulric Tobler*, and *John Pooler*, Esqrs. justices of the peace of the said county, and a jury by them selected; and farther stating, that the said conviction and sentence are illegal and void; and therefore praying, that a certiorari may be granted to remove the said proceedings of the said justices and jury; and the facts in the said petition stated having been supported by the said *Benjamin Burroughs* and *Oliver Sturges*, thereto attached; *It is ordered*, that the justices and their officers, have notice to attend before me, at the court house, on Thursday the 29th instant, to show cause, if any they have, why a certiorari should not be granted; and that a copy of this rule be served upon each and every of the said justices, and the constable, or constables by them empowered to execute the said sentence, and that notice of the ground on which this application is founded, be served upon each and every of the said justices, at least five days before the return of this rule : And it is likewise ordered, that the farther execution of the said sentence, and all other proceedings of the said justices and constables, be stayed until the determination of the aforesaid application, upon the return of this rule : and that the *jailer* of this county, do no

retain in his custody and safe keeping the said negro, *George*, until further order.

*May* 29, 1806.

On the return of the rule granted, upon the application of *Burroughs* and *Sturges*, in behalf of a free negro *George*, dated 22d May instant, it appearing that the grounds of exceptions had not been served on the justices in conformity with that order ; the argument therefore in this case is postponed until Tuesday next at 10 o'clock : And it is further ordered, that the moving counsel in this rule furnish the attorney general with a copy of the said grounds, as he appears in behalf of the magistrates.

*Chambers, Tuesday, June* 3, 1806.

Agreeably to the order of the 29th of May, Mr. *Charlton*, Attorney General, was served with the following grounds of exceptions to the proceedings of the justices of the peace, upon which a certiorari, as directed by the constitution, is prayed for :

1. Because, the jury who tried the case, or some part thereof, were not freeholders.(*a*)

2. Because, the justices did not suspend the execution of the sentence, and lay a statement thereof before the governor after security tendered, but proceeded to execute the same.

3. Because, the sentence is not warranted by the 12th sect. of the act entitled " An act for ordering and governing slaves, &c." passed 10th May, 1770, or by another section of the same, or of any other act in force in the state of Georgia.(*b*)

---

(*a*) Act of General Assembly, passed 10th May, 1770.
(*b*) Ibid.

11

GEORGIA,
Chatham Co.
JUNE, 1806.

Ex parte
George.

4. Because, justices of the peace have no jurisdiction in the trial of criminal cases.(c)

*Stites*, attorney for prisoner.

*Charlton*, Attorney General, in behalf of the Magistrates.

It being a general impression, that the provincial act of 1770, is not only the basis of the right, but the only legal authority by which our negroes are held in slavery, it is deemed proper, in the first place, to examine, how that impression is well or ill founded. If it is established as the result of that investigation, that the act of 1770 creates the only legal tenure by which the negro is held in bondage, then that act becomes a very delicate and sacred thing, and consequently too much caution cannot be used either in the discussion of its principles, or in the adoption of any measure or construction, which may tend to weaken those principles, or impede their operation. But if, on the other hand, the result of the investigation should demonstrate, that our system of slavery is guaranteed by compacts independent of the act of 1770 ; and that the right by which we hold the negroes in slavery would not be impaired, even if that act were repealed, then it is presumed, the court will feel less difficulty in giving a decision, which would directly, or in its consequences, shake a principle of that act.

There is no act, antecedent to the act of 1770, which either recognizes the system of slavery, or that declares the terms upon which a property may be had in the person and services of the slave. Before the passing of that act, however, the condition of the slave, as well as the rights of the master, were precisely the same as are designated and established by that act.

The act of 1770 was therefore passed out of abundant caution ; for without that authority, the acquiescence of the people, in the measures adopted to procure slaves for the colony ;

---

(c) Constitution of Georgia, Sect. 1. Art. 3. Marb. and Crawford, Dig. 27.

the unconditional terms of the sale and purchase destroyed, are the principles of the common law applicable to those subjects; for, instead of *things, persons* were made the objects of property.

·The laws of the mother country are enforced in the colony so far as they are applicable to a new state of things.

In England, *things*, and not *persons*, are the objects of property. 2 Blk. Com. 16. 1 Blk. Com. 423.

But the relations of the infant colony of Georgia, required an important innovation in this principle of the common law, and *persons*, as well as *things*, were the objects of property before the act of 1770.

The people of Georgia imported and purchased slaves upon the same terms that other colonies imported and purchased them; and in no other colony can a law be found, declaring the slavery of the negro to be of the absolute kind; because it was understood, that common consent, and the forms and manner of the purchase, as well as the necessity which introduced the system, rendered the slavery of the negro absolute and unconditional.

It is that kind of slavery which obtained in ancient Greece and Rome, and now among the Turks, and established upon the same principles. It would appear from these general observations, that the slavery of the negro was of the absolute kind antecedent to the act of 1770; and that, therefore, that act is only declaratory of what was before the law of the land.

The only difficulty which could have presented itself if that law had not been passed, would be, whether the offspring followed the condition of the mother or the father. On this point the civil and the common law are at variance : by the common law the issue follows the condition of the father; by the civil law, the condition of the mother. The act of 1770 adopts the civil law principle, which was the only principle in the abstract condition of the slave that remains to be legislated on, and in this particular only, is the act of 1770, as it respects our right to negro property, of any importance. 2 Blk. Com. 390. Litt. 187, 188. 11 St. Trials, 343.

GEORGIA, Chatham Co. June. 1806.

Ex parte George.

2 Blk. Com. 16 1 Blk. Com. 423.

2 Blk. Com. 390. Litt. 187, 188. 11 St. Tr. 343.

GEORGIA,        There is no law (as I have been able to discover) of the
Chatham Co.
JUNE, 1806.  state of Virginia, either in the provincial code, or her code
             since the revolution, which establishes a tenure by which
Ex parte
George.      negro property is held; yet the condition of the slave in
             that state is, and ever has been, unconditional and absolute,
             resulting from the manner of acquiring, as well as that kind of
             general understanding, which carries with it the force and
             authority of the most solemn written compacts.

             We find the system of slavery as thus established, support-
             ed and recognised by a decision in England.

             It was an action of *Ind. Assmt.* for a negro sold; and it was
             said by *Holt*, C. J. that a negro by entering England becomes
             free; but that a sale in Virginia, if properly laid, will sup-
2 Salk. 666.  port the action.   2 Salk. 666.

             The common law itself is supported by that universal con-
             sent, by which the system of slavery could have been sup-
             ported, and can now be supported without the interposition
             of the act of 1770.

             But there is a higher authority by which an absolute pro-
             perty in the slave is held.

2 Sec. 1 Act   It is declared, by the 2d section, 1st article of the consti-
Con. U. S. A.
             tution of the United States, "That representatives and di-
             rect taxes shall be apportioned among the several states,
             which may be included within this Union, according to their
             respective numbers, which shall be determined by adding to
             the whole number of *free persons*, including those bound to
             serve for a term of years, and excluding Indians not taxed,
             three fifths of all other persons."   Here then is a recogni-
             tion by this sacred instrument of the system of unconditional
             slavery; for as it has the distinction between the free man
             and the indented servant, the three fifths of the other per-
             sons alluded to must consequently be those persons who are
             held in bondage, or a state of servitude different from that of
             the indented servant; which in our country can be no other
             species of servitude than that which is attached to the un-
             conditional slavery of the negro.

             In including the slaves in the rule for the apportionment

of direct taxes, they have considered them as inanimate matter, as *things;* and, therefore, as *things,* they may be acquired and transferred by deed, or without a deed, upon those general principles which govern all other kinds of property ; thus then it results, that common consent, and the mode of purchase, (which had no analogy to the relation of servant in the common law of England,) which considered the negro as a thing, gave the master an absolute property antecedent to the act of 1770, had never been enacted, or if it was now to be repealed, our absolute property in the slave would not be impaired, but exist in the *same manner* as is expressed in that act.

GEORGIA,
Chatham Co.
June, 1806.

Ex parte
George.

These positions and deductions may perhaps have little weight in the mind of the court ; they however influence my mind, and enable me to investigate the principles of the act of 1770, with indifference and composure. 1st. The jury, or a part thereof, not freeholders. Vide Marb. and Crawf. Dig. 429. Sect. 8. Act of 1770.

Marb. & Craw.
Dig. 429. sect. 8.
Act of 1770.

This qualification of a juror is repealed, either by the negative words of the judicial act of 1770, or by evident implication. 5 Com. Dig. 248.

5 Com. Dig. 248.

The judicial act of 1799 requires the same qualification in a juror, as the qualification of a vote for members of the legislature. Marb. and Crawf. Dig. 303.

Marb. & Craw.
Dig. 303.

That qualification is designated by the constitution of this state, which requires that the voters or electors of the members of the General Assembly should have attained the age of 21 years, paid taxes, and resided six months within the county. Marb. and Crawf. Dig. 29.

Marb. & Craw.
Dig. 29.

The act of 1799 is therefore negatively expressed, and upon that ground, is a repeal *quo ad hoc* of the act of 1770.

So if a subsequent act enacts a thing inconsistent with the former, it is a repeal of the former. 1 Blk. Com. 89. R. 11 Co. 63 a. 5 Com. Dig. 249.

1 Blk. Com. 89.
R. 11 Co. 63 a.
5 Com. Dig. 249.

It is highly inconsistent that a more dignified mode of trial, such as that the jurors on trial of a negro should be freeholders, which necessarily carries with it the probability,

CASES IN THE SUPERIOR COURTS

GEORGIA,
Chatham Co.
JUNE, 1806.

Ex parte
George.

that there would be more virtue and respectability among that class of citizens than could be found in any other class; when on the trial of a *free citizen* it is only necessary that his jury should consist of persons in every situation of life, who have just passed the bounds of infancy, had a precarious residence of six months, and paid thirty-one and a quarter cents for his poll tax!

The qualifications of the judicial act of 1799, founded as it has been shown upon the 1st sect. of the 4th art. of the constitution, must be considered, therefore, upon this ground of inconsistency, as attaching themselves to *all jurors*, whether sitting upon the trial of the *free man*, or the slave.

In opposition to this maxim, another may be cited, to wit : " a statute which treats of persons or things of an inferior rank, cannot, by any general words, be extended to those of a superior." 1 Blk. Com. 87. And, therefore, as the act of 1770, speaks of slaves, it cannot be interfered with by the act of 1799, which treats of free citizens. The converse of the proposition is, however, true and legal, viz. That a statute which treats of superiors, will include inferiors.

1 Blk. Com. 87.

There is another maxim, if a statute concerns all persons generally, though it be but a special and particular thing, as a statute which concerns appeals, or assizes, or other particular action, is considered as a general law. 4 Co. 76 b.

4 Co. 76 b.

The act of 1799, as a general law, must control the act of 1770, though the act of 1799 speaks of a particular thing, the trial by jury ; but that particular thing concerns all persons, and therefore concerns the persons mentioned in the act of 1770.

2. Because the justices did not suspend the sentence upon security tendered.

The law certainly requires the justices to suspend the execution of the sentence, if good and sufficient security is tendered ; the law also makes the justices judges of the sufficiency of that security.

Upon the ground of *insufficiency* it might have been rejected, for aught that appears upon the record. *Non constat*, that

sufficient security were tendered, and if it does not appear, it ought to be presumed that that kind of security was not tendered, for every thing is to be presumed in favor of the magistrate acting under the obligation of his oath.

GEORGIA,
Chatham Co.
JUNE, 1806.

Ex parte
George.

The security might have been refused on another ground, viz. That the person, or persons offering himself or themselves as security, refused to make it appear to the satisfaction of the justices, that they were amply sufficient for the sum required. Marb. and Crawf. Dig. 257.(*d*)

Marb. & Craw.
Dig. p. 257.

The exceptions offered to and overruled by the inferior jurisdiction, constitute the basis of the certiorari, and unless the ground appears among those exceptions, no judicial cognizance can be taken of it.

3. The sentence is not warranted by the 12th section of the act of 1770.(*e*)

This is decidedly the most formidable ground the counsel have taken, and is therefore entitled to a more particular examination.

---

(*d*) This power is delegated in the 5th section of the " Act more effectually to punish persons guilty of stealing horses, asses, or mules." It is not, however, confined to persons charged with that species of felony ; for it declares, that in " *all cases* where bail is admitted. the person or persons becoming security, shall, if required, make it appear to the satisfaction of the court, that he, or she, or they, are amply sufficient for the sum for which such bail is taken."

(*e*) Sect. 12. And be it further enacted, that the several crimes and offences hereinafter particularly enumerated, are hereby declared to be felony, that is to say, if any slave, *free negro*, Indian, mulatto, or mustizoe, (Indians in amity with this government excepted) shall be guilty of homicide of any sort, upon any white person, except by misadventure, or in defence of his, or her own, or other person under whose care and government such slave shall be, or shall raise or attempt to raise any insurrection, or commit or attempt to commit a rape on any white person whatsoever, every such offender or offenders, his and their aiders and abettors, shall, upon conviction thereof, suffer death ; or if any slave, *free negro*, Indian, mulatto, or mustizoe, (except as before excepted) shall, wilfully and maliciously, kill any slave or other person as aforesaid, or shall break open, burn, or destroy any dwel-

GEORGIA,
Cåtham Co.
JUNE, 1806.

Ex parte
George.

It is contended, that as the punishment, in the conclusion of the section is affixed to slaves, (though in the previous parts *free negroes* are mentioned) it cannot by any construction apply to free negroes.

If the act is considered as involving all the principles of exposition, applicable to penal statutes, this ground of exception assumes a very serious aspect.

But this act is not to be expounded as a penal statute, it is to be construed most largely and beneficially for the purpose of carrying it more effectually into execution. It is so declared in the 45th section, Marb. and Craw. Dig. 439.

45 sect. Marb. and Craw. Dig. 439.

If a liberal construction is to be given it, then we are to look for the intention of the legislature, without regard to the strict and literal expressions of the act.

Common usage, or practice, is a sound principle in the exposition of statutes, where the words of the statute create a doubt. Rex *vs.* Hogg. 1 T. R. 728.

Rex vs. Hogg, 1 T. R. 728.

It has been the common usage and practice, to consider this section of the act of 1770, as equally applicable to free negroes, as to slaves.

Every statute ought to be expounded, not according to the letter, but according to the intent. 5 Com. Dig. 250.

5 Com. Dig. 250.

It obviously was the intention of the legislature, to place the *free negroes* upon the same footing with the slaves, as to

---

ling house, or other building whatsoever, or set fire to any rice, corn, or other grain, tar kiln, barrel or barrels of pitch, tar, turpentine, rosin, or any other goods or commodities whatsoever, or shall steal any goods or chattels whatsoever, *or delude and entice any slave or slaves to run away, whereby the owner of such slave or slaves shall, or would have lost and been deprived of such slave or slaves, any such slave or slaves, and his and their accomplices, aiders, and abettors, shall, upon conviction as aforesaid, suffer death, or such punishment as the said justices and jury shall, in their discretion, think fit.* Provided, that such *slave* or *slaves*, shall have actually prepared provisions, arms, ammunition, horse, or horses, or any flat, canoe, or other vessel, or done any other overt act whereby such their intentions shall be manifested. Marb. and Crawf. Dig. 430.

the punishment inflicted by the 12th section of the act of
1770, for *deluding* and *enticing* slaves to run away. The free
negro is so inseparably associated with the slave in that
section, that, except a liberal construction of it is adopted, it
is impossible to collect the intention of the legislature to be
any other than that which has been stated.

GEORGIA,
Chatham Co.
JUNE, 1806.

Ex parte
George.

If this ground is supported by a parity of reasoning, the
free negro is exempted, and cannot be tried for an offence
under the act of 1770, for the title of the act is confined to
the " *ordering and governing of slaves;*" and, therefore, if one
part is to be construed strictly, every other part must receive
a similar exposition.

Influenced by the impression that many things must be
supplied in the act of 1770, I have not taken advantage of the
omission in the 8th section, which, if taken literally, is exclu-
sively applicable to the case of the slave. Marb. and Crawf.
Dig. 429.

Marb. & Craw.
Dig. 429.

Though that section is silent as to the free negro, yet it
was certainly the intention of the legislature the same advan-
tage of an application to the executive through the medium
of his guardian, as is expressly given to the owner or trustee
of the slave.

If the intention of the legislature is rejected as the leading
principle of exposition, we shall never have done with the
absurdities and omissions of this act.

The 21st section establishes the fees for an unfounded and
malicious prosecution, *known* to be so by the magistrates at
the time the punishment is inflicted and carried into effect.
Marb. and Crawf. Dig. 432. This absurdity is rectified by
transposition and exposition, according to the intent.

Marb. & Craw.
Dig. 432.

The context of the act authorizes the infliction of the
punishment.

The act is to be construed, not upon the basis of that or
this principle, but by all its parts. 1 Blk. Com. 59.

1 Blk. Com. 59.

A free negro is not a member of a privileged order.' He
cannot surely commit crimes with impunity; but if this

GEORGIA,
Chatham Co.
JUNE, 1806.

Ex parte
George.

Marb. & Craw.
Dig. 423,

Ibid, 430.

ground of exception is maintained, he escapes all the penal consequences of the law, for as he cannot be tried as a free citizen, there is therefore no jurisdiction to which he is amenable.

Suppose a free negro strikes a citizen and wounds him grievously, can he be tried for that offence ? *No*, says the gentleman moving for the certiorari, because the 23d section of the act makes no mention of a free negro. Marb. and Crawf. Dig. 433.

Suppose a *free negro* administers poison, is he punishable with death ? *No*, the 13th section of the act speaks only of *slaves*, administering poison to any person or persons, whether free or bond. Ibid, 430.

No violence can be committed upon the principles of the law, by adopting the *intention* of the framers of the act of 1770, as the leading rule of exposition. If any other rule is resorted to, the act is a *carte blanche*, as it effects free people of colour.

Policy demands it of us, that no other privileges than those which flow from an imperfect state of freedom should be extended to persons of colour, or free negroes, than those enjoyed by slaves. The same kind of evidence, the same form of trial, should be established for one and the other. For, as soon as distinctions are attempted to be made in these respects, the free negro or man of colour, will begin to feel a dignity of character, and to affect rights highly incompatible with that distance at which he ought to be kept.

*Humanity* demands it of us, that all the omissions of the act of 1770 should be supplied, so as to bring the free negro within its operation, agreeably to the evident intention of the legislature ; for, otherwise, as the law, upon a liberal construction, exempts him from all the punishments inflicted therein, the free negro becomes a perfect outlaw, whom one may knock on the head, or destroy as his caprice may dictate.

The free negro is not mentioned in the 12th section of the

4th article of the constitution,($f$) or in the act carrying into effect that section. Marb. and Crawf. Dig. 443, yet will it be contended, that if a citizen wantonly kills or maims a free negro, or person of colour, that he is not subject to the punishment of the constitution and the law ?

GEORGIA,
Chatham Co.
JUNE, 1806.

Ex parte
George.

Marb. & Craw.
Dig. p. 443.

If reason and intention are not permitted to be our guides in the investigation of this subject, we get into a labyrinth, from whence we can never be extricated, unless a liberal construction is allowed us, as it seems to be expressly allowed by the law itself.

4. The justices have no jurisdiction in criminal cases.

It is scarcely necessary for me, I presume, to answer this ground. The inapplicability of it at the present discussion must be very obvious to the court ; but not to be wanting in respect to gentleman in passing over any of his objections, I shall barely and laconically observe, that the constitution of this state, upon which the exception is founded, was not made to establish the rights and liberties of slaves or free negroes ; they are left at the disposal of the ordinary sovereignty. One farther remark may be added, as free negroes, persons of colour, and slaves, can derive no benefit from the constitution, so neither can they be included by any general principles within the pale of its provisions.

The object and ends of fundamental laws are, the organization of government, and the protection of the general rights of mankind. The slave is divested of all those rights, for which government is erected ; how can you place him then, within the pale of the constitution ? His life, and those rights, which are incidental to his condition, are subjects for the consideration of the legislature, whose business it is to form a distinct code for those purposes.

---

($f$) Any person who shall maliciously dismember, or deprive a *slave* of life, shall suffer such punishment as would be inflicted in case the like offence had been committed on a free white person, and on the like proof, except in case of insurrection by such slave, and unless such death should happen by accident, in giving such slave moderate correction.—*Constitution of Georgia*, Marb. and Crawf. Digest, p. 30.

GEORGIA,
Chatham Co.
JUNE, 1806.

Ex parte
George.

In these respects the legislature is omnipotent ; (not being controlled by the constitution) may create a new jurisdiction, and delegate any powers its discretion may dictate.

*Per Curiam.* The present is a rule to show cause, why a writ of certiorari should not issue to remove the proceedings had before the magistrates, and a jury, under an act entitled " An act for ordering and governing slaves in this province, and for establishing a jurisdiction for the trial of offences committed by such slaves, and other persons therein mentioned, and to prevent the inveigling and carrying away slaves from their owners, masters, or employers."

The grounds upon which this application is made, are as follows, viz.

1. Because the jury who tried the case, or some part thereof, were not freeholders.

2. Because the justices did not suspend the execution of the sentence, and lay a statement of the case before the governor, after security tendered, but proceeded to execute the same.

3. Because the sentence is not warranted by the 12th section of the act, entitled an act for ordering and governing slaves, passed 10th May, 1770, or by any other section of the same, or of any other act in force in the state of Georgia.

4. Because the justices of the peace have not jurisdiction in the trial of criminal cases.

*Stites* and *Berrien* being heard in support of the rule, and Mr. *Attorney General* against it, after the most mature consideration, I am of opinion that a *certiorari* ought to issue.

> *Stites* and *Berrien*, in support of the rule.
> *Charlton, A. G.* against it.

*Minutes of Superior Court, letter E. p.* 346.

ON the return of the certiorari the court delivered the following opinion :

*January Term,* 1807.

After argument and mature deliberation, the court is of opinion, that the first ground of objection is sufficiently obviated by the testimony procured at the hearing ; but the 2d and 3d grounds are considered as tenable. The negro *George,* whether he be a free man or a slave, is equally entitled to the benefit of an appeal to the executive, the refusal of which is the basis of the 2d ground. And if it appeared to the court as to the third ground, that the act under which the prisoner was convicted is deficient in not describing the punishment to be inflicted for the crimes specified in the 12th section, when committed by a free man of colour, it is unnecessary to decide upon the last ground.

*Therefore it is ordered, that the said conviction and sentence be reversed,* and set aside, and that the said negro *George,* be discharged from his confinement.